## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
                              :
JOHN MCGARRIGLE, and          :
BARBARA MCGARRIGLE, h/w       :    Civil Action No.
                              :
          Plaintiffs,         :    09-4625
                              :
          v.                  :    OPINION
                              :
MERCURY MARINE                :
                              :
          Defendant.          :
                              :
```

RONALD ANTHONY GRAZIANO
GRAZIANO & FLYNN
1040 NORTH KINGS HIGHWAY
SUITE 650
CHERRY HILL, NJ 08034
*Attorney for Plaintiff*

KEVIN M. MCKEON
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002
  *and*
MARK H. VERWYS (Admitted *pro hac vice*)
PLUNETT COONEY
BRIDGEWATER PLACE SUITE 530
333 BRIDGE ST NW
GRAND RAPIDS, MI 49503
*Attorneys for Defendant*

**HILLMAN, District Judge**

Before the Court is defendant's motion for summary judgment and plaintiffs' cross-motion for partial summary judgment.  For reasons explained below, defendant's motion for summary judgment will be granted in part and denied in part, and plaintiff's cross-motion for summary judgment will be granted in part and denied in part.  Dr. Fisher will be allowed to testify

as plaintiff's expert, but cannot rely on the US Coast Guard
Navigation and Vessel Inspection Circular No. 4-89 in his
opinion.  Defendant is permitted to introduce as evidence of
proximate cause facts regarding the condition of the water and
speed of plaintiff's boat, and evidence of plaintiff's behavior
after he was ejected from the boat.  However, defendant will not
be permitted to introduce facts regarding plaintiff's father's
failure to read an owner's manual as evidence of comparative
fault or proximate cause since such misuse was foreseeable by
defendant.

## I.   <u>BACKGROUND</u>

        This consumer product liability case arises out of a
boating accident that occurred on July 21, 2007, in Seabreeze,
Cumberland County, New Jersey.  Plaintiff, John M. McGarrigle,[1]
was operating his father's boat, a twelve foot aluminum fishing
boat equipped with a 2001 15 horsepower Mercury Marine outboard
engine, when he was pitched overboard.  As plaintiff fell into
the water, his grasp on the tiller caused the boat to spin in a
clockwise motion.  The boat circled plaintiff several times,
coming closer to plaintiff with each rotation.  Plaintiff did not
try to swim towards the shore.  Plaintiff tried to grab hold of
the circling boat and climb on board, but the boat went over him

---

[1]     Plaintiff used singularly refers to John M. McGarrigle.

and the propeller from the engine struck his face and neck causing severe injuries.  Several witnesses observed the boat going in circles and went to assist the plaintiff or call for help.  One witness, Dr. William Pace, swam out approximately 100 to 150 feet from the shore, and supported plaintiff as he pulled him toward the shore.

New Jersey Marine Patrol Officer William Panco investigated the accident and interviewed plaintiff about a month after the accident.  Plaintiff told Officer Panco that the bay was fairly "choppy" on the day of the accident and that he was running about fifteen miles per hour.  Plaintiff stated he hit a wave and was ejected from the boat.  He also told Officer Panco that he "had a few beers earlier in the day" although Officer Panco did not feel that intoxication contributed or caused this accident.  Rather, Officer Panco concluded that the accident was caused by "excessive speed" although he testified that he has no personal knowledge of the plaintiff's actual speed.  Officer Panco had responded to the accident scene and observed that the water was "choppy" and "rough" for the type of boat used by plaintiff.  However, there was no small craft advisory issued that day by the U.S. Coast Guard.

The Mercury Marine outboard engine should be operated with a "lanyard" stop switch.  The purpose of the lanyard is to provide a safety device to stop the engine in the event of the

operator being thrown overboard.  One end of the lanyard is
inserted into the "run/off" switch while the other end is
fastened to the operator.  If the operator moves far enough away
from the engine, or is thrown overboard, the lanyard will turn
the engine off in order to prevent injury from a runaway boat.

When plaintiff's father, John W. McGarrigle ("Mr.
McGarrigle"), purchased the Mercury Marine engine in September
2001, he did not receive a lanyard stop switch.  He did, however,
receive an owner's manual which described the nature, function,
and purpose of the lanyard and the dangers of failing to use it.
Neither Mr. McGarrigle, nor plaintiff read the owner's manual.
Defendant's expert admits that it is well known that there are
people who will operate the boat who have not read the owner's
manual.  Mr. McGarrigle stated that had he read the manual, he
would have obtained a lanyard.  Both Mr. McGarrigle and plaintiff
admit that had a lanyard been used, the accident would not have
happened.

Mercury Marine has been designing, manufacturing and
selling outboard engines for use on recreational boats since
1939.  There is no evidence that any of Mercury Marine's engines
are not in compliance with all applicable safety laws and
regulations.  On its 2.5 to 6 horsepower outboard engines,
Mercury Marine uses a type of lanyard that prevents the operator
from starting the engine without first inserting the engine end

4

of the lanyard into the emergency stop switch on the engine (hereinafter "lanyard A").  All other manufacturers of outboard engines also use the lanyard A.  On its 8 to 25 horsepower outboard engines, however, Mercury Marine uses a design that allows the operator to start the engine without having the lanyard stop switch connected to the engine (hereinafter "lanyard B").  The lanyard B allows another boat passenger to restart the engine without a lanyard and navigate back to the person in the water.  Plaintiff was operating a Mercury Marine engine that relied on the lanyard B and, therefore, allowed plaintiff to start the engine without a lanyard stop switch.  There were no warnings on the engine advising the operator to use a lanyard switch or to read the owner's manual before operating.

Plaintiffs brought a product liability action against Mercury Marine alleging that Mercury Marine placed into the stream of commerce a product which was not fit, suitable and safe for its intended purpose; that plaintiff was a foreseeable user of the product and the events that occurred on July 21, 2007 were foreseeable; and that defendant failed to properly design and manufacture the engine and failed to adequately warn foreseeable users of the engine in violation of N.J.S.A. 2A:58C-2, et seq.

## II.   **JURISDICTION**

This matter was removed from Superior Court of New

5

Jersey by defendant.  This Court exercises subject matter
jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).
Plaintiffs are citizens of Pennsylvania.  Defendant is a division
of Brunswick Corporation which has its principal place of
business in Lake Forest, Illinois, and is incorporated in the
State of Delaware.  Plaintiff has alleged severe, permanent
injuries, pain and suffering, and lost wages.  Defendant in its
notice of removal asserts that the amount in controversy exceeds
$75,000.00, and plaintiff does not dispute that assertion.  <u>See</u>
<u>Sherman v. Bally's Hotel & Casino</u>, No. 09-cv-970, 2010 WL
1491425, at *1 (D.N.J. Apr. 13, 2010) (finding claims for
potentially permanent injuries and pain and suffering often give
rise to damages in excess of $75,000).

**III.  <u>SUMMARY JUDGMENT</u>**

    Summary judgment is appropriate where the Court is
satisfied that "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330
(1986); Fed. R. Civ. P. 56(c).

    An issue is "genuine" if it is supported by evidence
such that a reasonable jury could return a verdict in the

6

nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A fact is "material" if, under the
governing substantive law, a dispute about the fact might affect
the outcome of the suit.  Id.  In considering a motion for
summary judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence "is to be believed and
all justifiable inferences are to be drawn in his favor."  Marino
v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.
2004)(quoting Anderson, 477 U.S. at 255).

     Initially, the moving party has the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the
moving party has met this burden, the nonmoving party must
identify, by affidavits or otherwise, specific facts showing that
there is a genuine issue for trial.  Id.  Thus, to withstand a
properly supported motion for summary judgment, the nonmoving
party must identify specific facts and affirmative evidence that
contradict those offered by the moving party.  Anderson, 477 U.S.
at 256-57.  A party opposing summary judgment must do more than
just rest upon mere allegations, general denials, or vague
statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.
2001).

     If review of cross-motions for summary judgment reveals

7

no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. <u>See</u> <u>Iberia Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).


IV. **<u>DISCUSSION</u>**

In order to pursue a product liability action against a manufacturer, a plaintiff must show "by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose." N.J.S.A. 2A:58C-2. This can be demonstrated by showing that the product failed to contain adequate warnings or instruction, and by showing that the product was designed in a defective manner. <u>Id.</u> Plaintiffs intend to meet their burden by providing expert testimony through their expert, Kenneth W. Fisher, Ph.D. Defendants argue that Dr. Fisher is not qualified to testify in this matter.

A. **Expert Admissibility**

Defendant argues that plaintiffs' expert should be stricken as plaintiffs' liability expert and should be precluded from testifying because he and his opinions cannot survive the <u>Daubert/Kumho Tire</u> analysis.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 states:

8

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed.R.Evid. 702.

The three requirements outlined in Rule 702 are referred to as: qualification, reliability and fit. Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citing Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). The Third Circuit explained the three requirements as follows:

> First, the witness must be qualified to testify as an
> expert.  Qualification requires that the witness
> possess specialized expertise. We have interpreted this
> requirement liberally, holding that a broad range of
> knowledge, skills, and training qualify an expert as
> such.  Second, the testimony must be reliable.  In
> other words, the expert's opinion must be based on the
> methods and procedures of science rather than on
> subjective belief or unsupported speculation; the
> expert must have good grounds for his or her belief.
> An assessment of the reliability of scientific evidence
> under Rule 702 requires a determination as to its
> scientific validity.  Third, the expert testimony must
> fit, meaning the expert's testimony must be relevant
> for the purposes of the case and must assist the trier
> of fact.

Id. (internal quotations and citations omitted).  Defendant challenges plaintiffs' expert on all three requirements.

### 1.   Qualification

Defendant argues that Dr. Fisher is not an expert

9

regarding small fishing boats and 15 horsepower engines.
Defendant argues that with respect to the design, manufacture or
testing of outboard engines or lanyard stop switches for such
engines, Dr. Fisher has had no formal education or informal
training, no employment experience or background, and no
teaching, consulting or writing experience.  Defendant further
argues that Dr. Fisher has had no professional involvement with
any pertinent recreational boat organization and has had no
relevant personal experience or previous expert witness
experience with regard to the type of boat and engine involved in
this matter.  Defendant maintains that Dr. Fisher's expertise is
in the area of design and construction of ships and large
maritime structures, and the contracts and financing of such
activities.

Plaintiffs respond that defendant's definition of
qualifications is so narrow that only former employees of
outboard engine manufacturers would qualify.  Plaintiffs state
that Dr. Fisher has extensive experience in the area of boating
safety; that he has been a professor of naval architecture,
marine engineering and mechanical engineering prior to engaging
in consulting work full time; that he is a graduate of Webb
Institute of Naval Architecture and has a master's degree in
naval architecture, marine engineering and engineering mechanics
from the University of Michigan; and that he received a doctorate

in engineering economics applied to ship design from the University of Sydney.  Plaintiffs point out that Dr. Fisher is a contributing author and editor of the books <u>Maritime Product Liability</u> and <u>Developments In Marine And Small Craft Liability</u>. Plaintiffs state that Dr. Fisher has analyzed, reported and testified in product liability cases including claims involving placement of grab-rails on recreational boats, steps for boarding cabin cruisers, securing of electrical cables against spark-generation, personal protection from rotating engine shafts on yachts, handrails alongside stairways, footwells on personal watercraft, anti-skid deck properties, railings alongside ramps, and "hold-back devices" for raised engine hatch covers. Plaintiff further states that Dr. Fisher gave seminars across the nation to over 200 representatives of manufacturers of boats and boat equipment regarding the rationality of design decisions.

The Third Circuit instructs that the qualification requirement should be interpreted liberally, and that "a broad range of knowledge, skills, and training qualify an expert as such." <u>Calhoun</u>, 350 F.3d at 321 (citing <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II")); <u>Thomas & Betts Corp. v. Richards Mfg. Co.</u>, 342 Fed.Appx. 754, 760-61 (3d Cir. 2009).  It appears from Dr. Fisher's deposition testimony and affidavit that he has not previously provided any testimony concerning lanyard stop switches.  Dr. Fisher's expertise seems

to be more in the area of larger vessels or ships, rather than small craft boats. However, Dr. Fisher's formal qualifications in the marine industry are extensive and are not challenged by defendants. Moreover, Dr. Fisher provides in his affidavit that the mechanics, functioning and safety issues pertinent to the use of smaller hand-tilled outboard engines in the rage of 8-25 horsepower are not unique and involve the same safety issues as larger outboard engines.

Therefore, liberally applying the qualification requirement to Dr. Fisher's qualifications, the Court finds that Dr. Fisher is qualified to testify as an expert in this case. See Thomas, 342 Fed.Appx. at 761 (finding expert's testimony would not be unhelpful to a finder of fact merely because it referenced the rubber molding industry generally and not the subset industry of underground electrical connector manufacturing); Pineda v. Ford Motor Co., 520 F.3d 237, (3d Cir. 2008) (finding expert's expertise in the stresses and other forces that might cause a material to fail was more than sufficient to satisfy Rule 702, and that the expert did not need to be substantively qualified in the design of automobile rear liftgates or the drafting of service manual instructions); Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996) (finding it "an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be

the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.").

### 2.   Reliability

Factors the Court should consider in determining whether an expert's opinion is reliable are:

(1) whether a method consists of a testable hypothesis;
(2) whether the method has been subject to peer review;
(3) the known or potential rate of error;
(4) the existence and maintenance of standards controlling the technique's operation;
(5) whether the method is generally accepted;
(6) the relationship of the technique to methods which have been established to be reliable;
(7) the qualifications of the expert witness testifying based on the methodology; and
(8) the non-judicial uses.

Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003) (citing Paoli II, 35 F.3d at 742 n. 8 (citing Daubert, and United States v. Downing, 753 F.2d 1224 (3d Cir. 1985)).  These factors "are neither exhaustive nor applicable in every case."  Pineda, 520 F.3d at 248 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. at 137, 151, 119 S.Ct. 1167 ("noting that Daubert itself 'made clear that its list of factors was meant to be helpful, not definitive'") (other citations omitted).

The trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  Kumho Tire, 526 U.S. at 152, 119 S.Ct. at 1176; Viking Yacht Co. v. Composites One LLC, 613 F.Supp.2d 626, 634 (D.N.J. 2009) ("an expert's testimony is

admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing Pineda, 520 F.3d at 247 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (internal quotation marks omitted)).  The Third Circuit has cautioned that "the standard for determining reliability 'is not that high,' [] even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702." In re TMI Litigation, 193 F.3d 613, 665 (3d Cir. 1999).

In this case, plaintiffs' expert is offering an opinion that the lanyard B was defectively designed, and that a safer alternative would be the lanyard A or warnings on the engine.  As such, this is not an overly complex opinion and, therefore, there is no need to address every Daubert factor.  Rather, the Court will focus on Dr. Fisher's choice of industry standards and overall reliability.

Defendant argues that Dr. Fisher's sole reliance on the 2007 American Society of Testing and Materials ("ASTM")[2] F 1166-07 standard for his opinion regarding human factors engineering is misplaced because the ASTM F 1166-07 does not apply to

---

[2]   See Milanowicz v. The Raymond Corp., 148 F.Supp.2d 525, 533 (D.N.J.,2001) (finding that while ASTM lacks the legal authority of federal regulations, it provides detailed design standards which reflect systematic testing and safety certification); see also http://www.astm.org/ABOUT/overview.html ("ASTM International, formerly known as the American Society for Testing and Materials (ASTM), is a globally recognized leader in the development and delivery of international voluntary consensus standards.").

14

recreational boats and outboard engines.  Defendant maintains
that the ASTM F 1166-07 refers to ships and marine structures,
but it does not specifically mention recreational boats or
outboard engines.  Plaintiff argues that the ATSM F 1166-07
applies to "maritime structures" and the 12' boat involved in
this case falls under the category of maritime structure.
Defendant replies that Dr. Fisher could only name one other
person, a naval architect, that agreed with his position that a
12' recreational boat was a "maritime structure."

        Defendant's criticism of Dr. Fisher's reliance on the
ASTM F 1166-07 is more a disagreement in methods than a showing
of unreliability.  See U.S. v. Williams, 235 Fed.Appx. 925, 928
(3d Cir. 2007) ("The requirement of reliability is lower than the
standard of correctness.  A judge can find an expert opinion
reliable if it is based on 'good grounds' or methods and
procedures of science rather than on subjective belief or
unsupported speculation") (citing Daubert, 509 U.S. at 590, 113
S.Ct. 2786)).  Although defendant points out that the ATSM F
1166-07 seems to be tailored for larger vessels or ships,
defendant does not provide any evidence, or expert testimony,
that a 12' recreational boat is not a "maritime structure".  Even
if the ASTM does not directly apply to recreational boats,
plaintiffs argue that there are no ASTM standards that directly
apply to recreational boats or outboard motors and, therefore,

15

Dr. Fisher applied the standard that most closely fit.
Plaintiffs state that experts often reason by analogy using
general principals established by a certain standard even if not
directly on point.  Plaintiffs point out that defendant's expert
has agreed that experts sometimes reason by analogy.

        Defendant does not challenge plaintiffs' assertion that
no other ASTM standard directly applies to recreational boats.
Defendant does not argue that the ASTM, in general, should not or
does not apply to recreational boats.  Therefore, the Court finds
that Dr. Fisher's reliance on the ASTM F 1166-07 by analogy to
recreational boats is not unreliable under Rule 702.  See In re
Ephedra Products Liability Litigation, 393 F.Supp.2d 181, 189
(S.D.N.Y. 2005) ("The analogies, inferences and extrapolations
connecting the science to the witness's conclusions must be of a
kind that a reasonable scientist or physician would make in a
decision of importance arising in the exercise of his profession
outside the context of litigation."); see also In re Human Tissue
Products Liability Litigation, 582 F.Supp.2d 644, 657 (D.N.J.
2008).  If there is a gap between the ASTM F 1166-07 standards as
written and as applied by Dr. Fisher, any inconsistencies go to
the weight of the evidence, not to its admissibility.  See
Campbell v. Metropolitan Property and Casualty Ins. Co., 239 F.3d
179, 186 (2d Cir. 2001); Crowley v. Chait, 322 F.Supp.2d 530, 541
(D.N.J. 2004)(revisions by experts were not evidence of flawed

methodology, but raised questions that went to the weight and credibility of the testimony, not to its admissibility); <u>Voilas v. General Motors Corp.</u>, 73 F.Supp.2d 452, 459 (D.N.J. 1999) (finding that challenge to expert's decision to discard certain options goes to the weight to be accorded to the expert's opinion rather than its admissibility).

Notwithstanding the ASTM F 1166-07, plaintiffs also argue that, in addition to the ASTM, Dr. Fisher relied on the US Coast Guard Navigation and Vessel Inspection Circular No. 4-89 ("4-89 Circular") regarding human factors engineering application to design, construction, overhaul, and maintenance of vessels. Further, plaintiffs point out that Dr. Fisher has suggested a reasonably safe alternative design, the lanyard A, which is already used in the industry, and proposed that defendant add a warning on the engine to either insert the lanyard switch or read the owner's manual before operating.

Defendants reply that the 4-89 Circular is limited to commercial vessels and, therefore, is not applicable. Unlike the ASTM F 1166-07, plaintiffs do not offer any evidence that the 4-89 Circular could be applicable to recreational boats. Thus, Dr. Fisher may not rely on the 4-89 Circular as a standard for human factors in this case involving a 12' foot recreational boat. The exclusion of the 4-89 Circular, however, does not render Dr. Fisher's opinion unreliable since he is permitted to rely on the

ASTM F 1166-07.

Defendant also argues that there is no reliable basis for Dr. Fisher's opinion on a safer alternative design by using the lanyard A because he has not conducted certain tests or research on accident occurrence using one type of lanyard versus the other.  Defendant further argues that there is no reliable basis for Dr. Fisher's opinion regarding use of a label that would be affixed on the outboard engine.

Dr. Fisher has pointed to an alternative design, the lanyard A, already used in the industry.  An alternative design that is in use by an industry can be evidence of its reliability.  See Milanowicz v. The Raymond Corp., 148 F.Supp.2d 525, 533 (D.N.J. 2001) (finding an important indicia of reliability to be whether other manufacturers and consumers in the industry utilize the allegedly defective design or proposed alternative); see also Lewis v. American Cyanamid Co., 155 N.J. 544, 560, 715 A.2d 967, 975 (N.J. 1998) (under New Jersey law, to succeed on a design-defect claim, a plaintiff is "required to prove that a practical and feasible alternative design existed that would have reduced or prevented his harm.").  As stated above, this is not an overly technical case.  The fact that the very stop switch that Dr. Fisher proposes be used, the lanyard A, is used by the rest of the recreational boating industry, as well as by defendant in other boat models, provides the requisite indicia of

18

reliability.  See Thomas v. CMI Terex Corp., No. 07-3597, 2009 WL
3068242, at *8 (D.N.J. Sept. 21, 2009) (Simandle, J.)(finding
expert was not required to test alternative safer design already
in use on a similar piece of machinery because it provided
sufficient reliable proof that this alternative design (extremely
simple, to the point of needing very little explanation) was
feasible and effective) (citing Lindsey v. Caterpillar, Inc., No.
03-5762, 2007 WL 1816105, at *4-5 (D.N.J. June 22, 2007));
Milanowicz v. The Raymond Corp., 148 F.Supp.2d 525, 533 (D.N.J.
2001) ("In alternative design cases, evidence of industry
practice may help negate criticism based on lack of testing.").
Likewise, no extensive testing and research would be needed in
this case to offer an opinion that a warning label should be
affixed the outboard engine.  Id.

        Thus, the Court finds that Dr. Fisher's opinion is
sufficiently reliable under Rule 702.

        **3.   Fit**

        The third and final requirement is that the expert
testimony "fit," meaning, "the expert's testimony must be
relevant for the purposes of the case and must assist the trier
of fact." Calhoun, 350 F.3d at 321.  A connection must exist
"... between the expert opinion offered and the particular
disputed factual issues in the case." TMI Litigation, 193 F.3d
at 670 (citing Paoli II, 35 F.3d at 743).  In order for an

expert's testimony to fit, "the scientific knowledge must be connected to the question at issue."  Paoli II, 35 F.3d at 745 n. 13.  "Fit is not always obvious, and scientific validity for one purpose is not necessarily validity for other unrelated purposes."  TMI Litigation, 193 F.3d at 670.  The standard for fit is "not that high" but "is higher than bare relevance."  Paoli II, 35 F.3d at 745.  Plaintiffs do not have "to prove their case twice - they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."  Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000).  "A court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.'"  Id. (citing Heller v. Shaw Industries, Inc., 167 F.3d 146, 153 (3d Cir. 1999).  "A court may conclude that there is simply too great a gap between the data and the opinion proffered."  Id. (citations omitted).

          Defendant argues that Dr. Fisher should not be permitted to testify that the design of the outboard engine was and is defective because it does not incorporate a lanyard A type stop switch.  Defendant states that between 1986 and July 2007, it sold more than 750,000 8 to 25 horsepower outboard engines that use the lanyard B.  It also states that, other than

plaintiff's accident, it is aware of no other accidents of a scenario similar to plaintiff's, which resulted in propeller strike injuries to an ejected operator of a small hand-tilled outboard engine who did not use the lanyard B.  Defendant further states that the accident occurred because neither plaintiff nor his father read the owner's manual which would have advised them to use a lanyard, and because plaintiff was operating his boat at too high a speed and failed to swim to shore after he was ejected.

The issue in this case is whether the lanyard stop switch used by defendant was defectively designed and caused plaintiff's injuries.  Dr. Fisher is offering an opinion that the lanyard was defectively designed because it allowed the operator to start and operate the boat without using the lanyard.  Dr. Fisher examined the outboard engine involved in this case, reviewed certain regulations and codes, and reviewed defendant's as well as a competitor's owner's manual for recreational boats. His conclusions can flow from his experience and methodology of identifying another lanyard stop switch commonly used in the industry that requires the key to be inserted before the engine will start.  See Milanowicz, 148 F.Supp.2d at 533 (finding that an important indicia of reliability is industry practice - "whether other manufacturers and consumers in the industry utilize the allegedly defective design or the proposed

alternative" and that "[i]ndustry practice may be used as a proxy for peer review" so that "evidence of industry practice may help negate criticism based on lack of testing") (citing <u>Stanczyk v. Black & Decker, Inc.</u>, 836 F.Supp. 565, 567 (N.D.Ill. 1993); <u>McPike v. Corghi, S.P.A.</u>, 87 F.Supp.2d 890, 893-94 (E.D.Ark. 1999)).

Thus, Dr. Fisher and his opinions meet the requirements under Rule 702 and <u>Daubert</u>.[3]

### B.   Plaintiff's Cross Motion

Defendant seeks to introduce evidence that plaintiff's decision to operate his father's small fishing boat in water too high and at a speed too great was the only reason he lost control of the boat and was ejected overboard.  Defendant also seeks to introduce evidence of plaintiff's behavior after being ejected as the reason for his injuries.  Finally, defendant seeks to introduce evidence that plaintiff's father failed to read the owner's manual, or offer it to his son to read.  Plaintiff argues that defendant should not be permitted to introduce evidence of plaintiff's alleged comparative negligence.

In New Jersey consumer design defect cases, "the conduct of an injured plaintiff ... is not relevant in

---

[3]      Defendants also summarily state that it is entitled to summary judgment because a product safe for normal use is not defective.  Since defendant has not shown as a matter of law that the product at issue is safe for normal use, it is not entitled to summary judgment on this ground.

determining the existence of a manufacturing defect or design defect." <u>Wallace v. Ford Motor Co.</u>, 318 N.J.Super. 427, 723 A.2d 1226 (App.Div. 1999) (citing <u>Grier v. Cochran Western Corp.</u>, 308 N.J.Super. 308, 324-25, 705 A.2d 1262 (App.Div.1998); <u>Johansen v. Makita USA, Inc.</u>, 128 N.J. 86, 101, 607 A.2d 637 (1992)). "However, a plaintiff's conduct may be relevant to the 'question of proximate cause,' in that a jury may find that plaintiff's conduct 'had been the sole cause of the accident.'" <u>Id.</u> (quoting <u>Johansen</u>, 128 N.J. at 102-03, 607 A.2d 637; citing <u>Grier</u>, 308 N.J.Super. at 325, 705 A.2d 1262). In addition, if the consumer plaintiff knows of the danger or risk and nonetheless voluntarily proceeds in the face of the known danger or risk, a plaintiff's comparative negligence can be submitted to the jury. <u>Johansen</u>, 128 N.J. at 94, 607 A.2d at 642 ("In general...when a plaintiff with actual knowledge of the danger presented by a defective product knowingly and voluntarily encounters that risk, a trial court should submit the comparative-negligence defense to a jury."); <u>Ramos v. Silent Hoist and Crane Co.</u>, 256 N.J.Super. 467, 478-79, 607 A.2d 667, 672 (App.Div. 1992) (distinguishing between a workplace setting where comparative fault is disregarded and non-workplace settings where a plaintiff's comparative fault is "limited to unreasonably and intentionally proceeding in the face of a known danger."). However, "[c]ontributory negligence is not a defense to a strict-liability action when a plaintiff's

23

negligent conduct consists of merely failing to discover or guard against the possibility of a defect in a product." Johansen, 128 N.J. at 94, 607 A.2d at 641 (citations omitted).

Here, there is no evidence that plaintiff intentionally proceeded in the face of a known danger. The deposition testimony presented shows that plaintiff did not read the manual and did not know that the engine was to be operated with a lanyard. Therefore, evidence of plaintiff's comparative negligence as to a known risk will not be permitted.

However, evidence that plaintiff operated the boat in water too high and at a speed too great causing him too lose control and be ejected will be permitted on the issue of proximate cause. See id., 128 N.J. at 98, 607 A.2d at 644 (determining that plaintiff's actions were relevant to the issue of proximate cause even though jury could not consider conduct as evidence of contributory negligence); see also Madden v. Cosco, 2010 WL 2867899, at *4 (N.J.Super.A.D. 2010) ("absent a comparative negligence defense, a plaintiff's conduct is also relevant to establishing proximate cause.") (citing Johansen, 128 N.J. at 97-99, 607 A.2d at 644). Likewise, defendant will also be permitted to introduce evidence of plaintiff's actions after he was ejected from the boat before contact with the engine's propeller. Id. Plaintiff's conduct surrounding the accident is essential to the facts determining how the accident occurred. In

24

order to present a prima facie case of how the accident occurred, plaintiff must detail his actions using the engine.  Therefore, defendant is permitted to introduce such facts as evidence of proximate cause, but not as evidence of comparative negligence.

With regard to evidence of plaintiff's father's failure to read the owner's manual, plaintiff has produced testimony by defendant's expert stating that defendant knew that operators would not read the manual before operating the engine.  Under New Jersey law, "in applying strict liability in torts for design defects, manufacturers cannot escape liability on grounds of misuse or abnormal use if the actual use proximate to the injury was objectively foreseeable."  Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137, 151, 484 A.2d 1225, 1232 (N.J. 1984) (citing Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 386 A.2d 816 (overruled on other grounds); McDermott v. TENDUN Constructors, 211 N.J.Super. 196, 210, 511 A.2d 690, 698 (App.Div. 1986).  The evidence shows that the failure to read an owner's manual before operation of the engine was foreseeable by defendant and, therefore, facts of plaintiff's father's failure to read the manual or provide it to his son to read will not be introduced to show comparative fault or proximate cause.

V.     **CONCLUSION**

      For the foregoing reasons, defendant's motion for summary judgment will be granted in part and denied in part, and plaintiff's cross-motion for summary judgment will be granted in part and denied in part.


                                 s/Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Date: December 20, 2011

26